Peter Howard oral argument is not to exceed 10 minutes for each defendant and 20 minutes for the appellee, Mr. Willis and Mr. Watson for the appellants. If I were in better voice it would have come out a little clearer, but I would like to reserve three minutes in your honor. In order to round out the argument that I'm presenting on behalf of Mr. Ray. You're Mr. Willis. I am Mr. Willis, yes. If it pleases the court, the facts in this case are not really in serious dispute. A young lady by the name of Tanya, who is unknown to the police, was arrested at 1.50 p.m. on the east side of Cleveland, headed east, having left a hotel on the west side of Cleveland. After she was stopped, the police ended up searching her car and finding two kilograms of cocaine. Almost immediately she capitulated and decided she wanted to be a cooperating witness. And she having first indicated that she was coming from a beauty salon that a friend of hers owned on the west side, indicating she was unaware she had been followed. She ultimately said that she had been at this Days Inn on the west side, west on 17th Street, borderline between Cleveland and Lakewood. And that she had gone into a room where she had purchased these two kilograms of cocaine. They were fronted to her meeting on a consignment and she would pay for them within two days. The police immediately sent a detective to watch the room. And while doing so, they saw the cleaning people clean 114 and also clean 112. They saw no scurrying activity of giving off any indication that they were aware that they had been brought to the attention of the police. As a matter of fact, one of the individuals had gone out to a local area, a diner, and had bought some food. He came back, went into the room. The police saw this 20 minutes before they entered the premises. They saw the other individual laying across the bed, engaged in a normal pursuit. Twenty minutes later, at 309, the police broke into the room. Ostensibly their purpose was to arrest the individuals in the room and to secure the premises. They had a canine with them. And what this canine did, we were not told except the judge said, so they had a dog with him and he sniffed. But the reality is, after they entered the room, they took pictures of the two individuals in room 112. One of them had on a Las Vegas shirt, which is the type of shirt that had been described by this young lady as having been worn by one of the two individuals. The police took a picture of him, took a picture of the other individual, and two other people who were in the adjoining room, they took pictures of those people as well. Now the question here, of course, as I see it, is did they have probable cause one, to enter the premises, to make an arrest, and to make a search? At that particular point, they emphasized Segura, which of course is a case that's critical here. But they overlooked the fact that in Segura, the police had probable cause. And even though they searched and they found a lot of other things on the premises that were not mentioned in the search warrant, the Supreme Court seemed to think, well, it doesn't harm the efficacy of the search warrant because it set forth probable cause without regard to the legal observations that the police made during the 18 hours they had that building under siege. In this particular case, the officers, understand this is 309, at 610 or something shortly after 6, they searched the premises on the basis of the search warrant. During this entire interim, Jesse Ray, Howard, and the other two individuals in the other room were all in handcuffs. Clearly they wanted to arrest. In the search warrant affidavit, they have included the fact, one, that Jesse Ray, the four people have been arrested. They're being detained. They have been identified. They had another interview with the young lady who was arrested. They have been identified by the young lady, the two of the individuals, Howard and Ray. All this is in the search warrant affidavit. Understand now, the officers also indicated in the search warrant affidavit that Jesse Ray had been arrested in Reno, Nevada sometime previous to that with $140,000. All this is in the search warrant affidavit. Counsel, isn't the question, let's say we agree with you that they did not need to go in. The place was secure. They should have waited for the warrant. But then isn't the question whether they had enough evidence without any of those observations to get the warrant? I think that would not be the end answer because we have to deal with Missouri versus McNally. Missouri versus McNally, yeah it is McNally, indicated that telephonic search warrants have to be regarded as a factor that bears on accident circumstances. In this particular case… What about inevitable discovery? In other words, you don't have an accident circumstances problem if the police inevitably would have discovered all of this without doing anything illegal. In other words, just having watched her leave the hotel, having stopped her after she violates the traffic laws, find the cocaine. She admits she was at a place that looks like the day's end. It seems to me at that point you have more than enough probable cause to get the warrant for those rooms. So why wouldn't you say inevitable discovery? I'm really amazed that the court would take the position that that's probable cause. This is a first time informant who admittedly… I'm not relying on the informant. Everything I said has nothing to do with the informant. Pretend the informant doesn't exist. All that's happening is they're publicly observing a hotel and rooms. They're not invading anyone's privacy. A woman leaves the hotel. They follow the woman. It's just a suspicion. They couldn't stop her until she violates the traffic laws. Once she violates the traffic laws, they properly find the cocaine. She admits she was coming from a place that meets the description of the day's end. That doesn't matter. They saw her leave the day's end. Right. Right there you have probable cause to… Search the day's end or to search 112 or 114. She doesn't know what room she came out of. Well, they have a sense of where it was. Sure they do. That's sufficient probable cause to arrest or sufficient probable cause to search. At most they could have is probable cause to arrest. Why not probable cause to search? I didn't understand you. Why not probable cause to search? To search for what? She didn't give any indication. Understand, she said that when she went into the room, there were two kilos of cocaine on the bed. She didn't say, I saw other cocaine. She didn't say anything of that nature. All she said, there were two kilos of cocaine laying on the bed, which she weighed, put in her bag, and walked out of the building. She doesn't give any indication that some sort of criminal conduct is taking place other than her acquisition of those kilograms of cocaine. And I doubt that that's sufficient probable cause to arrest them. I mean, I would have thought if you find that someone had a lot of cocaine in a room, that you have probable cause that there's either more or there's other evidence of the tools of the trade, say money, scales. Do you have a case that says that's not true? No, I don't have any cases that says it is. And I've read a lot of them, probably as many as anybody else in the country. But the reality is, and just since we're talking about that, as I was reading over the cases I had cited, and one was U.S. versus Renfro decided in 1960, I believe, which happened to be my case, involved facts that were somewhat similar to this, where the police were aware the two people had engaged in drug transactions outside the home. They saw them enter this house, according to the opinion of this court. They knocked on the door, ostensibly for the purpose of seeing if they could be voluntarily admitted in order to talk to these two people. But when they did, the people ran, and the police were able to see that. And that, this court said, gave them exigent circumstances, although they had no intentions of arresting the owner, Andrew Renfro, and they did follow him upstairs. I think your time is up, Mr. Willis. I saw that. I would like to reserve whatever I have left. Mr. Watson. Thank you very much. May it please the Court, Myron Watson representing the appellant in this case, Peter Howard. I would like to reserve a couple of minutes for rebuttal, with the Court's permission. I wanted to, at least before I get started, answer Judge Sutton's question with regard to a case that has been decided by this Court, that goes with regard to the observation of drugs on the premises, or a drug transaction taking place on the premises, and that not being, in itself, sufficient profit. Judge Sutton can tell you what his question was, but I thought it went to the issue of when you find a person in the possession of two kilograms of cocaine, what inferences is it appropriate to draw about what conduct is going on at the place from which she came, and what else might be found there, if not more drugs than paraphernalia. In one case, it's similar to that, but it's not exactly like this case. I wanted to point the Court to the case involving United States v. Weaver, and that was a case that was decided by this Court, where there was a drug transaction of half an ounce of marijuana, and what the Court ultimately decided was that there were no observations about any type of mechanisms relating to drug trafficking activity. It was a half ounce? It was a half ounce of marijuana, which lends itself that it doesn't necessarily mean, of course, that there's trafficking going on, but it doesn't exclude the possibility as well, particularly when the informant had indicated that they believed, one of the informants believed that it was a marijuana growing operation. But nonetheless, we believe that in this particular instance, that it wasn't probable cause for the police officers to arrest Mr. Howard or Mr. Ray, and likewise, we believe that with the issue of... So let's just say it's a whole truckload, and they've just unloaded it from this hotel, and you're not allowed to go back to the hotel on the assumption, gee, I think they might be dealing with something from that hotel room. I don't know why I'm thinking that. Because possibly the interpretation is whether or not there's a fair probability that drugs will be found in the home. Now, the police in this instance didn't have any information that they would find additional drugs, because it could be simply a one transaction. You don't have to find just drugs. I mentioned paraphernalia, but then there's always money. Right, but in this particular instance, you had Ms. Johnson say that the drugs were given to her by consignment. That means that she did not use money to purchase these drugs, and that the understanding was that she was going to pay back the money within a few days. How about paraphernalia? What's that? How about the tools of the trade, scales? Right, but she didn't indicate that she observed scales on the premises. She didn't see any other parts of the trade or the tools of the trade. If something just happened, I mean, they had information that connected the drugs to the particular venue. I mean, it's not like there was a deal outside in the parking lot, and turns out the person's in that room. I mean, the information was that she got the drugs from the room, and it wasn't stale. It was like brand new information. Why is it not logical? Why would one think that this was the only deal? Why wouldn't one legitimately think that there might be more drugs in that very room that these drugs came from? Because it lends itself to supposition or speculation. The reason why I say that is because it would be different in a lot of the cases you're dealing with a reliable informant. You're dealing with someone who has some working knowledge as to what the police officers themselves develop some level of trust. Reliable informant or lack of reliable informant seems pretty much beside the point. Okay. I mean, you've got the woman leaving the venue. You've got her with two kilograms of cocaine. You've got her describing the circumstances under which she obtained it. But you can't associate what she says as proof that she dealt with the individuals that were ultimately arrested. Well, that's kind of your jury argument at trial about why she should her whatever or some point down the road or your fact argument to the district court. I mean, that doesn't have much to do with the state of mind that the information officers had and what basis that gave them for acting on the specific day in question. And there was also surveillance. But the surveillance didn't do anything to corroborate or support that there was a sale that was made by Ms. Johnson with regard to the two people that in room 112. But it corroborated her description and it corroborated it was consistent with where she says she came from. Yes, she indicated she came from the days in. They saw her leave the days in. Yes. So it's not like I mean, it's not like she's trying to pin it on somebody. It would be different. Let's say they saw her. Let's say they didn't know where she came from. And she could have said, oh, she came from, you know, someplace else. And she did that initially. And go and and so go go search the beauty shop or something. Well, if they didn't know where she came from and, you know, maybe they would have a reason. But they actually saw her leave the days in. So it was credible. Her account was credible. It was it was verified by other independent information. What if it were a situation that she said that I went into 114 instead of 112? What probable cause still would exist to search and arrest those particular persons that were in 112? I think you have I think you have a serious problem in this case. If you have a sense of what part of the hotel she's coming from. And when they stop her, she exercises her Fifth Amendment rights and says nothing. But it's two kilograms of cocaine. That's a lot of cocaine. You have a pretty serious problem it seems to me. I just I can't imagine a warrant not issuing. I mean, for the hotel rooms in that part of the hotel where she left. Even if, even under my scenario in which she says that I came from room 114 instead of 112. Would that empower a judge that there was probable cause to search both hotel rooms? I think the judge is going to rely on what they saw in terms of what room she likely was leaving from. Including the fact that it's plural. It might be one of two or three rooms. Surveillance had actually previously implicated both rooms. Right. Why wouldn't it go for both rooms? Well, I tend to think that the issue of probable cause, the particular place to be searched. And I think just by saying that she was in proximity of those two rooms. Does not necessarily implicate that those particular transactions were conducted in that room. But they saw the people. They saw the people, but they didn't see the transaction. They're only basing it on what Ms. Johnson told them. That's it. I think if there are no further questions, you've been fully heard on this point. All right. Mr. Shepard. Thank you very much. Good afternoon, your honors. May it please the court, Matthew Shepard on behalf of the United States. Your honors, the decision of the district court denying the motions to suppress by both appellants should be affirmed in this case, your honor. The first, taking a look at the probable cause that the court was just discussing with a counsel for the appellants. The position of the government is that there was more than enough probable cause. Beyond just the fact that this specific cocaine was taken from that room. There were also other additional factors indicate there would be additional evidence in that room. Such as the packaging of the particular cocaine that she was found with was packaged unlike the officer testified normally would be. You'd find a brick of cocaine in a brick format as a kilo. It was in a Ziploc bag loose indicating it had been taken off of larger amounts of cocaine. There was testimony that included in the affidavit for the warrant that Ms. Johnson described future communications that would take place between her and the suppliers of the cocaine. That there would be future phone calls which would indicate there would be additional evidence such as cell phones, such as paperwork, perhaps with donors. Between the exigent circumstances doctrine and inevitable discovery that I've just always puzzled. I've just never figured this out. You may have a quick answer and if you don't, don't worry about it because I haven't figured it out in 11 years. But I don't understand why inevitable discovery doesn't almost always trump exigent circumstances. For exigent circumstances in this case you'd say we have probable cause and then on top of that you have to say we had a reason to go right into the room without the warrant. Those are the two things. But if you have the first thing, probable cause, why don't you always have inevitable discovery? Because that will always suffice for the warrant. There seems to be something about that that doesn't make sense to me. As a matter of logic, your honor, I don't disagree that typically you would have the factual at least beginnings for both arguments. Isn't that problematic? I mean it just seems like it. Well, I think one distinction and I'm failing to come up with the name of the case right now. But in my understanding of inevitable discovery law, also there needs to be some indication that the, for example, the obtaining of a warrant didn't come after the fact. That the decision to obtain a warrant had to have been some indication that at least it was sort of an ongoing alternative method in the sense of a, and in this case I guess in the sense of they didn't say, oh, we have exigent circumstances. We need to hit this room and search for it and then later decide we're going to go get a warrant. But isn't a part of it that it seems like these two doctrines that there'd be some, when there's, there can be the situation we have here when all the information needed to obtain the warrant is available prior to the entry in which it is argued there were exigent circumstances. In other words, nothing changed. But then there's the situation in which the arguably illegal first entry yields more information. And in that situation, then the inevitable discovery doctrine might not apply. So I mean there's a place for both, but in a case like this where all the information is known, you know, on the front end it seems like exigent circumstances just becomes, it becomes not very meaningful in the ultimate analysis. Is that, am I on your way? No, because then you, in your hypothetical I'm not sure you had probable cause to begin with. Mine? Yeah, yeah. I think the assessment of inevitable discovery, we're now talking to each other and not to you, which is a little rude to a guest. So I'll put it in the form of a question. Yes, Your Honor. I think the inevitable discovery doctrine is always triggered only by the information the police have before the illegal entry. So in other words, you can't, that would collapse them. But I'm still worried they're collapsed as is. Well, but I don't think, even though there may be a logical, a worry there, I don't think that the response to that is well, you can never have exigent circumstances because otherwise then the case law is saying that there are circumstances where you can enter, exigent circumstances exist for all sorts of reasons. I don't think that that's necessarily the solution. But I'm still very uncomfortable with the whole situation because I don't understand what the, and I'm not accusing the police of bad faith here. I'm just, I don't understand the incentive of going to the warrant. If you can always say, well, Joe, do your best to get something, but we're crashing this place right now. Because as long as you have probable cause, you'll always be able to say, you know, we would have gotten a warrant anyway. Maybe the whole point is, well, that's relying a lot on the courts and the courts of appeals, and that's high risk. Whereas if you go to the magistrate first, you eliminate a lot of risk. Maybe that's the answer. And I think you're also, I think I hear you, again, we're sort of talking to each other, but I think I heard you also stress the fact that you have to go for the warrant because you're really honoring the warrant requirement. And so exigent circumstances is one thing, and, you know, that eliminates the need for the warrant. But if you're talking about, you know, some of these hybrid, we're preserving things, et cetera, you're only going to be able to invoke the inevitable discovery if you have gone ahead and gotten that warrant. Because probable cause won't do it for you. You need, the discovery is inevitable because you got the warrant. And I think one way, I guess, thing I would, I guess, offer the court in thinking about this, and there are circumstances where exigent circumstances would exist where the inevitable discovery doctrine may not come into play. And I'm thinking of an example where it's not like this where there's surveillance and a traffic stop, but more of a spur of the moment, almost hot pursuit situation where things are happening so quickly, there isn't any advanced investigation. For example, if I'm even thinking of an example, say the officers were at the hotel. If you seize, you need probable cause. You can't ratchet down the probable cause requirement with exigency. That's correct, Your Honor, but the probable cause that develops may not – and I guess I see how I'm talking myself into a loop because the example I would say is, for example, the situation where the officers see someone, you know, they're chasing someone who's holding a firearm, chasing someone. They chase him in hot pursuit into a room. That gives them the probable cause if the evidence is in the room. So I see your – the dilemma I'm trying to – I'm putting myself in. But I do think in the facts of this case, though, those concerns aren't – just aren't present because in this case, this was a situation where the officer in charge of the investigation, he didn't just on the spur of the moment say, hey, instead of going to get a warrant, we're going to go hit this door because I can later claim exigent circumstances. He sought the advice from the local prosecutor. There's not a lot of cases where that was the testimony. Well, but those are the facts of the case we have. I understand what you're saying in broader issues and broader concerns, Your Honor. Listen, I haven't figured this out, so something about it doesn't make sense. And I guess as I was looking at the issue, I was more looking at the idea of, I guess, independent – as opposed to inevitable discovery in the sense that even if the initial exigent circumstances entry was not proper, the warrant they ultimately get was based on information from outside of that entry. It really doesn't matter in terms of this case how you characterize it from your perspective. That's correct, Your Honor. We believe there was probable cause to support the warrant independent of the entry, and we also believe there was exigent circumstances. So we don't think they're mutually exclusive. On the circumstances point, turns out that there really wasn't – in retrospect, there's not an indication that Ms. Johnson was trying to warn the defendants here. But what we would focus on is what the officers reasonably thought at the time. Yes, Your Honor, we would believe it's what's objectively reasonable to them at the time. And it's a little bit of perhaps a problem in reviewing is that the district court did an oral ruling in this case. And when he's talking about exigent circumstances, it's really quite brief. And he doesn't really – he appears to make a legal conclusion, but then he doesn't really give us explicitly the factual underpinnings for that. Would you say that's a correct characterization? Well, I think he certainly determines that there was – makes the finding that there was exigent circumstances. But he – it's very general. You're right. Your Honor, he spends most – the facts that he suggests are more along the lines of the probable cause to believe there's evidence in the room that's an accurate representation of what he said and doesn't focus on why they believed the objectively reasonable reasons for believing the evidence would be destroyed or could be destroyed. Right. And in fact, all of the indications were that they had no idea what was going on. Well, Your Honor, I guess I would dispute that to a point. I would say the officers couldn't say that they – the officers at the house – or at the – not the house, at the hotel couldn't say that they saw anything specific which would indicate that like scurrying around or suddenly everybody grabbing their suitcases and running out the door. But then also you're talking about during part of this time what's going on behind a closed hotel room. And when they actually go make entry to the room, the doors are closed and they can't see what's happening inside that room. And in the context of a hotel room in which by its very nature it's a transient location in that people typically don't have a lot to pack. There's a – the living space is relatively small typically. There's a bathroom attached at which evidence can be flushed or destroyed. It doesn't necessarily take a lot to just walk away. You may not – it's not like walking away from a home where all of your possessions are there. That in the context of a hotel room especially when you know the individuals are in there, that there's a – for a group of people who appear to be at least associating with each other and they're now behind closed doors. In the context of this person having taken that amount of cocaine away, it was objectively reasonable for the officers to believe that they would be notified of what happened and evidence leading to the destruction of evidence. Even if they didn't see that, but the problem is they just – they're not going to be able to look behind that closed door of a hotel room. Are there any further questions on the issue of the exigent circumstances or on the issue of probable cause from members of the panel? Do you think of independent source and inevitable discovery as the same or do you have some – it kind of is the same point, isn't it? Just different words? I would say different words, Your Honor, essentially. For all practical purposes, if you're talking about an independent source, I think the only – I guess maybe the distinction – The point is independent of what you found after the illegal search. Correct. So it's more of a backward looking, I think. I got it. I got it. Doctrine and forward looking with inevitable discovery would be my best way I could distinguish them. If there are no further questions from members of the panel, thank you very much, Your Honor. Mr. Willis. First of all, I don't think inevitable discovery has any role whatsoever to play here. Based on the search warrant affidavit that they issued, which included all of these illegal acquisitions, you can't assume that, well, inevitably, if we searched this on the basis of a valid search warrant, we would have found these drugs. I don't think you're qualified for a legitimate search warrant. Period. I take the position – and let's understand, they didn't find any scales, any wrapping papers or anything like that inside that hotel room. What did they find? They found 86,002 kilograms of cocaine. Period. That's it. We understand. I've been – I've tried so many of these cases. I've been in all types of them. I've been in cases where the hotels, where the police go to the hotel management and have them turn off the water in the hotel room. That eliminates this flushing. They use ruses to get the people out of the hotel. They call and say there's something wrong with this or something wrong with that, something wrong with your bill or whatever. They did none of these things. They just arbitrarily assumed. And understand, their indications as to what accident circumstances were was that a belief that Tanya had contacted someone who would alert the defendant, that the police were aware of their presence and that they would then destroy the evidence. That's what they say were the accident circumstances. That's not accident circumstances in the context of this case. If they believe there was a big quantity of cocaine, they have to be insane to believe it can be flushed down the toilet in less time than three to four hours if it doesn't clog up the toilet. Unfortunately, I've been involved in cases where as many as 1,500 kilograms and they came up with the same arguments. Accident circumstances because we were fearful that they were going to destroy it. How? It's like you can't burn a body in a house fire if you try to conceal a homicide. You certainly can't flush that quantity of cocaine that they say. The officer's testimony was that it had come from a larger supply. The young lady said, I had the scale. They had two kilos laying on the bed. I weighed it. She didn't say they weighed it for me. I believe that the accident circumstances is a red herring. What is this court going to do about Missouri versus McNeely? I don't think we can just dismiss that case as though the Supreme Court didn't decide it. And here in McNeely, they were talking about taking a blood test with reference to whether or not a person was intoxicated. And we know about the oxidation rate of blood in the body, oxidation rate of alcohol in the body. We have time for questions, Mr. Willis. Are there additional questions? No. Thank you. Mr. Watson. Yes. I wanted to address a point that I wasn't able to get to with regard to the warrantless search of the hotel room itself. The court had made some findings relative to accept Lieutenant Carabello's testimony in total, even though he was not present on the scene for all the time that elapsed before obtaining the search warrant. And we believe that Mr. Howard's testimony was not given proper consideration because his testimony was not controverted by any way by Lieutenant Carabello's testimony. So with reference to the issue of inevitable discovery, we believe that the issue in this case and how Howard was harmed was that Howard testified that the officers had searched the premises and he had observed the bag of money that was on the bed while he was in the breakfast room. Now, the government says in this argument that, and the court made note of, that there wasn't a specific time, but we know from the evidence in the case that the warrant was not obtained and the execution of that warrant didn't occur until three hours later. And I just didn't think that the court could make a finding that Mr. Howard's testimony categorically should be rejected without any countervailing evidence from the government side of the case which says we had officers who were present during that period of time and no officers searched that room. Thank you very much. We appreciate the argument that all of you have made and will consider the case carefully. Thank you for your presentation.